# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAMES L. PACK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17−cv–0880−MJR |
| | ) | |
| **ROBERT C. MUELLER,** | ) | |
| **JOHN R. BALDWIN,** | ) | |
| **CHRISTOPHER BOEHLER,** | ) | |
| **STEPHEN KEIM,** | ) | |
| **STEPHANIE WAGGONER,** | ) | |
| **JARED R. FARTHING,** | ) | |
| **MARK A BURTON,** | ) | |
| **MCQUARRIE,** | ) | |
| **MEIER,** | ) | |
| **R. VOSS,** | ) | |
| **HOLTON,** | ) | |
| **KINK,** | ) | |
| **LARRY GEBKE,** | ) | |
| **MONIKA CHRISTIANSON,** | ) | |
| **GALE HEIMGARDTNER,** | ) | |
| **BART TOENNIES,** | ) | |
| **ROBERT T. WEGMAN,** | ) | |
| **SUSAN WALKER,** | ) | |
| **JOHN AND JANE DOES,** | ) | |
| **SONDRA MILLNER,** | ) | |
| **DILLE, and** | ) | |
| **RUPERT** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff James L. Pack, an inmate in Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests

1

injunctive relief and monetary damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## **The Amended Complaint**

Plaintiff originally brought suit on August 21, 2017. (Doc. 1). Prior to screening, Plaintiff sought leave to file an Amended Complaint on September 8, 2017. (Doc. 8). The Court

granted leave once as a matter of course on October 3, 2017, (Doc. 10), and the Amended Complaint was filed on October 4, 2017. (Doc. 11).

Plaintiff became a Wiccan in the fall of 2014. (Doc. 11, p. 15).[1] On December 12, 2014, he ordered a book, Witches' Craft: A Multidenominational Wiccan Bible. *Id.* Before he could receive Witches' Craft, Officer Voss told him that it had to be sent to the Publication Review Board. *Id.* The Publication Review Board determined that the book contained 6 pages of objectionable material depicting bondage, and that it was on a state-wide banned list. *Id.* Plaintiff offered to cut out the 6 pages, but Larry Gebke and Monika Christianson told him he had to send Witches' Craft out or have it destroyed. (Doc. 11, pp. 15-16).

On May 3, 2016, Voss called Plaintiff to the personal property department to pick up a Celtic cross with a small pentagram, which had been approved by Chaplain Heimgardtner. (Doc. 11, p. 16). Plaintiff filed a motion to join a related action in this court, 14-cv-661-SMY-RJD, on October 16, 2016. *Id.* On October 25, Voss confiscated the cross on the orders of McQuarrie. *Id.* Voss specifically told Plaintiff that he was following McQuarrie's orders and did not know why the cross was being confiscated. *Id.* Plaintiff's counselor, Susan Walker, denied his grievance on this issue. (Doc 11, p. 17). Bart Toennies and Warden Robert Mueller also denied the grievance in January 2017. *Id.*

Officer Farthing, who was assigned to Plaintiff's housing unit as a "Control Officer," shook down Plaintiff's cell on January 7, 2017. *Id.* Plaintiff alleges that shaking down cells was Officer Meier's duty, not Farthing's. (Doc. 11, p. 17, 19). The shakedown focused on Plaintiff's property, not his cellmate's. (Doc. 11, p. 17). Farthing destroyed a 2-inch pyramid that

---

[1] Plaintiff included some factual allegations that he then omitted from his statement of claim. As some of these facts do not appear relevant to the claims in this lawsuit, the Court will not discuss them further. To the extent that Plaintiff intended to bring claims based on facts not discussed in this order, he should file a motion seeking leave to amend, and clarifying which claims he believes those facts support.

3

Petitioner used in the practice of his religion. *Id.* As he did so, Farthing laughed and told Plaintiff that he didn't like Wiccans. (Doc. 11, p. 17, 19). Farthing also confiscated a denim coat and 2 small prayer stones. *Id.* Farthing told Plaintiff that if he could prove the stones were vital to his religion, he would return them. *Id.* Plaintiff was issued a ticket regarding the coat because it had a secret pocket; Plaintiff contests this characterization. (Doc. 11, p. 17-18). Plaintiff alleges that Farthing continued to point and laugh at Plaintiff to other officers after the incident. (Doc. 11, p. 20).

Plaintiff went before a disciplinary committee made up of Burton and Rupert after the cell shakedown. (Doc. 11, p. 18). When Plaintiff tried to explain about his prayer stones, Burton said, "They are not fucking prayer stones. They are just rocks and prayer stones are what the state approves and comes in through the mail." *Id.* As punishment, Plaintiff received 1 month B grade. *Id.* He filed a grievance, which was denied by Wegman, Mueller, and Baldwin. *Id.*

Plaintiff also alleges that his grievances regarding the confiscation of his religious items and the scheduling of Wiccan prayer services should have been heard by the Religious Practice Advisory Board and not the Administrative Review Board. (Doc. 11, p. 19).

On September 6, 2017, Plaintiff was making legal copies for this suit when the law librarian, Sondra Millner noticed a copy of an email between Chief Chaplain Keim and Teri Anderson regarding the banning of the Witches' Craft. (Doc. 11, p. 20). Millner suggested the email be confiscated and Mueller agreed. *Id.* Dille confiscated the email. (Doc. 11, p. 12). Millner also refused to make copies of certain Illinois regulations when she discovered the nature of his cause of action. (Doc. 11, p. 20).

Plaintiff has also been prohibited from possessing a set of Rune tiles, a deck of Tarot cards, a prayer rug, and a pentagram, which are all necessary to the practice of his sincerely held

religious beliefs. (Doc. 11, p. 21). Wiccans are also not allowed to access the chapel space on the same basis as other groups. *Id.* When Chaplain Heimgardtner was chaplain, he allowed Wiccans to meet on the 1st, 3rd, and 5th Fridays of the month; when Chaplain Boehler took over in January 2017, he changed the scheduled to every 2nd and 4th Friday of the month because he did not want the Wiccans to be able to meet twice in a row during months with 5 weeks. *Id.* The change in the schedule has also caused problems with creating accurate call lists for services. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 10 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1** – Mueller, Boehler, Keim, Baldwin, and John and Jane Does (Unknown Publication Review Board members) impermissibly burdened Plaintiff's exercise of his sincerely held religious beliefs when they created or approved policies that prohibited the possession of tarot cards, <u>Witches' Craft: A Multidenominational Wiccan Bible</u>, rune tiles, a pentagram symbol, etc.; and that offered services to Wiccan inmates on unequal terms as members of other religious denominations in violation of the First and Fourteenth Amendments, the Religious Land Use and Institutionalized Person's Act (RLUIPA), and the Illinois Religious Freedom Restoration Act (IRFRA);
>
> **Count 2** – Gebke, Christianson, Voss, and John and Jane Doe members withheld <u>Witches' Craft: A Multidenominational Wiccan Bible</u> from Plaintiff in violation of the First and Fourteenth Amendments, RLUIPA, and IFRRA;
>
> **Count 3** – Heimgardtner, McQuarrie, Walker, Waggoner, Toennies, and Mueller confiscated Plaintiff's Celtic cross from him in violation of the First and Fourteenth Amendments, RLUIPA, and IFRRA;
>
> **Count 4** – McQuarrie, Walker, Waggoner, Toennies, and Mueller retaliated against Plaintiff for attempting to join the Sangraal litigation, 14-cv-661- JPG, by confiscating his Celtic cross;
>
> **Count 5** – Farthing and Meier retaliated against Plaintiff due to his Wiccan beliefs when Farthing tossed his cell, destroyed a pyramid, confiscated a coat and

5

prayer stones, and mocked Plaintiff after the incident in violation of the First Amendment;

**Count 6** – Burton, Rupert, Wegman, Mueller, and Baldwin retaliated against Plaintiff for his Wiccan beliefs by disciplining him for possession of his prayer stones and a coat and/or condoning such discipline in violation of the First Amendment;

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review:

**Count 7 –** Boehler impermissibly burdened Plaintiff's exercise of his sincerely held religious beliefs when he changed the schedule of Wiccan services repeatedly in order to make it more difficult for inmates to be called for services in violation of the First and Fourteenth Amendments, RLUIPA, and IRFRA;

**Count 8** – Burton, Rupert, Wegman, Mueller, and Baldwin violated Plaintiff's due process rights when they disciplined him for possession of a coat and prayer stones;

**Count 9** – Millner, Dille, and Mueller violated Plaintiff's right of access to the courts under the First Amendment when they confiscated his email regarding the confiscation of the <u>Witches' Craft: A Multidenominational Wiccan Bible</u> and refused to make copies of relevant regulations and guidelines;

**Count 10** – Plaintiff's grievances and concerns were heard by the Administrative Review Board and not the Religious Practice Advisory Board.

As to **Counts 1-3**, prison officials may act to limit the expression of sincere religious belief if the restriction is justified by a legitimate penological interest. *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005); *Childs v. Duckworth*, 705 F.2d 915, 920 (7th Cir. 1983). Legitimate penological interests include the preservation of security in prison, as well as economic concerns. *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). When these concerns are raised as justifications by prison officials for their actions that restrict the practice of religion, the Court looks at four factors to determine whether the restriction is constitutional:

(1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there

are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."

*Id.* (citing *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004)).

The Fourteenth Amendment equal protection clause prohibits discrimination and requires the evenhanded treatment of all religions:

> In providing [inmates the] opportunity [to practice their religion], the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted).

**Counts 1-3** state constitutional claims under the First and Fourteenth Amendments. Plaintiff has alleged that prison officials instituted policies that prohibited him from owning or using objects central to his Wiccan faith. He has also alleged that he was deprived of a pentagram symbol and a book that are fundamental to his practice of religion. He has further alleged that Wicca is being treated differently than more mainstream religions like Christianity due to disparate scheduling practices or policies. These allegations state a claim under the First and Fourteenth Amendment, both for the policies at issue, and in the case of the confiscation of Plaintiff's book and Celtic cross, against those who actually did the confiscating.

RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc–5(4). It offers broad protection to institutionalized persons by prohibiting substantial burdens on their religious exercise. § 2000cc–3(g). This protection extends to "any exercise of religion, whether or not compelled by, or central to, a system of

religious belief." § 2000cc–5(7)(A). However, RLUIPA does not provide a cause of action for money damages against officials in their individual capacity, *see Nelson v. Miller,* 570 F.3d 868, 886–89 (7th Cir. 2009), or official capacity, *see Sossamon v. Texas,* 563 U.S. 277, 280 (2011). Therefore, Plaintiff may not pursue a claim for money damages against any Defendant under RLUIPA. Instead, the Court will allow him to proceed with a request for injunctive relief against Defendants Mueller, Baldwin, and Keim whom he has already named in their official capacities for this purpose. However, although Plaintiff has also named all other defendants in their official capacities, there is no allegation that these individuals are actually responsible for the policies at issue. As these defendants are not responsible for the policies at issue, they cannot be held liable in their official capacities, and any claim under RLUIPA against them must be dismissed due to the prohibition on receiving monetary damages under RLUIPA. To the extent that Plaintiff has an official capacity claim against anyone other than Mueller, Baldwin, and Keim, those claims are dismissed.

In addition, the Court must dismiss Plaintiff's IRFRA claim against all Defendants. Like RLUIPA, the IRFRA provides that the government may not "substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 ILCS § 35/15. However, the Illinois Court of Claims has exclusive jurisdiction over IRFRA claims. *See Wallace v. Miller,* No. 09-cv-342-JPG, 2014 WL 552885, at *2 (S.D. Ill. Feb. 12, 2014). A suit against a public employee in his official capacity is a suit against the state, and the Illinois Court of Claims has "exclusive jurisdiction of all claims" against the state founded upon any law of the State of Illinois. *See Nelson,* 570 F.3d at 885; 705

ILCS § 505/8(a). Likewise, federal district courts have barred individual-capacity IRFRA claims, holding that IRFRA claims against state employees are in effect claims against the state. *See Wilkins v. Walker,* No. 09-cv-457-MJR-SCW, 2012 WL 253442, at *3 (S.D.Ill. Jan. 26, 2012) (collecting cases). Under the circumstances, all of Plaintiff's IRFRA claims shall be dismissed without prejudice to Plaintiff re-filing this claim in the Illinois Court of Claims.

In **Count 3** Plaintiff has also listed Gale Heimgardtner, the chaplain who originally approved of his cross, as a defendant. Approving the cross initially states no claim, and Plaintiff has pleaded no facts tending to show that Heimgardtner was personally involved in the ultimate confiscation of Plaintiff's cross, so Heimgardtner will be dismissed without prejudice.

Plaintiff has articulated viable retaliation claims in **Counts 4-6**. To succeed on a First Amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

In **Count 4**, Plaintiff alleges that McQuarrie, Walker, Waggoner, Toennies, and Mueller retaliated against him for attempting to join the Sangraal litigation. A review of the Court's docket shows that Plaintiff filed a motion seeking joinder as a plaintiff in that case on October 24, 2016. (Case No. 14-661, Doc. 119). Litigating legitimate claims is protected conduct, and Plaintiff's participation in the Sangraal lawsuit was that of an interested party. Plaintiff alleges that the very next day, a Wiccan symbol that he had been wearing without incident or censure for 6 months was confiscated. The timing is suggestive of retaliation, and Plaintiff's claim will proceed.

The same reasoning applies to **Count 5**. Plaintiff has alleged that Farthing tossed his cell, and while he did so, he made derogatory comments about Plaintiff's religion. Plaintiff alleges that Farthing choose to focus on Plaintiff's possessions because of Plaintiff's religion. Plaintiff's religious practices are protected First Amendment conduct, and to the extent that Farthing singled him out for harassment such conduct could be retaliatory. At this stage, Plaintiff has articulated a valid claim against Farthing in **Count 5**.

However, it appears that Plaintiff is also trying to say that Meier retaliated against him. Plaintiff has not alleged that Meier took any action that affected Plaintiff. Plaintiff's theory appears to be that Meier should have conducted the cell shakedown on January 7th because he was assigned to those duties that day. This is insufficient to state a claim against Meier. As an initial matter, the failure of prison officers to follow their own regulations and guidelines does not state a constitutional claim. *See Whitman v. Nesic*, 368 F.3d 931, 935 n. 1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (§ 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations). Even if conducting cell shakedowns was part of Meier's duties and not Farthing's, Meier's failure to conduct them states no claim because it is merely a violation of internal prison regulations. Additionally, Plaintiff has not adequately stated a claim against Meier for retaliation standing alone. He has not alleged that Meier knew he was a Wiccan or that he took any action adverse to Plaintiff at all. Meier will be dismissed from this action without prejudice for failure to state a claim.

In **Count 6**, Plaintiff alleges that he was further retaliated against by other prison officials when he was disciplined as a result of Farthing's cell inspection. Plaintiff alleges that Burton denied that Plaintiff's prayer stones were legitimate during his hearing, and subsequently punished him for possessing them. It is a plausible inference from these facts that Burton was

disciplining Plaintiff on the basis of his religion in violation of the First Amendment. Additionally, Plaintiff has alleged that Rupert, Wegman, Mueller, and Baldwin either signed off on the discipline or refused to intervene when alerted to the possible constitutional violation. At the pleading stages, that is sufficient to make an allegation that Rupert, Wegman, Mueller, and Baldwin were personally involved, and so **Count 6** shall proceed against Burton, Rupert, Wegman, Mueller, and Baldwin.

The remainder of Plaintiff's claims must be dismissed at this time. Plaintiff has alleged that his exercise of religion was further burdened by a change in schedule that was difficult for the computer system to handle. However, Plaintiff has not alleged that he actually missed any services as a result of the schedule changes. He has said it is more difficult for the guards to know who is scheduled for services, but he has not said that it is impossible. These facts state no claim, and **Count 7** will be dismissed without prejudice. If Plaintiff wishes to allege more facts, he may move to file an amended complaint raising them.

**Count 8** is similar to the claims in **Count 6**, as it also centers on the disciplinary proceedings that occurred after Plaintiff's allegedly improper cell search. A plaintiff states a due process claim when the state deprives him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Here Plaintiff has no due process claim because he only received B-grade status as a result of the discipline, and a prisoner has no liberty interest in his status. *Whitford v. Boglino*, 63 F.3d 527, 533 n. 7 (7th Cir. 1995). Therefore, **Count 8** will be dismissed with prejudice as legally frivolous.

Finally, in **Count 9**, Plaintiff has alleged that the law librarian confiscated an email in his possession between 2 IDOC employees regarding the confiscation of <u>Witches' Craft</u>, and that

Mueller supported her action. The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials interfered with his legal materials. *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). As relevant to the allegations here, temporary confiscation of documents, without more, fails to demonstrate a violation of the Constitution. *Devbrow*, 735 F.3d at 587; *Hossman v. Spradlin*, 812 F.2d 1019, 1022 (7th Cir. 1987). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid*, 969 F.2d at 603.

To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Here Plaintiff has not been able to point to a lost claim It is possible that Plaintiff was photocopying the document for use in this case, but not having it at this point does not prejudice

12

him in the slightest. Plaintiff will be able to seek discovery against defendants after they have answered and the Court has entered a scheduling order. He can request the documents formally at that time, and seek Court intervention in the event relevant documents are not produced to him. Having suffered no prejudice or deteriment in any action, Plaintiff fails to state a claim in **Count 9**. **Count 9** will be dismissed without prejudice for failure to state a claim. Millner and Dille will be dismissed without prejudice from this action.

**Count 10** will be dismissed with prejudice as legally frivolous. Plaintiff alleges that the Administrative Review Board was the wrong body to hear his grievances raising religious issues. As discussed above with reference to Plaintiff's allegation that officers did not follow their assigned roles when they shook down his cell, prisoners have no constitutional right to see that administrative rules and guidelines are followed. *See Whitman v. Nesic*, 368 F.3d 931, 935 n. 1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (§ 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations). Even if Plaintiff is correct and his grievances should have been referred to others for disposition, such conduct does not give him a legally cognizable right.

Plaintiff has also named Lt. Holton and Assistant Warden Kink as defendants in this action, along with a general allegation that they are responsible for training and supervision. Plaintiff has not included Holton and Kink in his statement of claim, and the mere mention of their alleged responsibilities does not state a plausible constitutional violation.

The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule

of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Because Plaintiff has not listed Defendants Holton and Kink elsewhere in his complaint, he has not adequately stated claims against these individuals, or put them on notice of any claims that Plaintiff may have against them. For this reason, Defendants Holton and Kink will be dismissed from this action without prejudice.

### **Pending Motions**

Plaintiff's Motion to Appoint Counsel will be addressed by separate order by Magistrate Judge Stephen C. Williams. (Doc. 3).

Plaintiff has been granted leave to proceed in forma pauperis. (Doc. 6). Pursuant to Fed. R. Civ. P. 4(c)(3), the court must order service for those that have been granted plead to proceed in forma pauperis. Plaintiff's Motion is therefore **MOOT** because the Court is already compelled to order service. (Doc. 4).

Plaintiff has requested certification of a class of "offenders in the Illinois Department of Corrections, past, present, and future that are part of the Pagan religions, including but not limited to Wicca and Odinism." (Doc. 8, p. 1). Despite this request for class certification, no

other Plaintiff appears to be involved in this action. No one else is listed as a Plaintiff in the case caption or appears to have participated in drafting the pleadings or filing the lawsuit. Many of Plaintiff's allegations are specific to him alone, i.e. his allegations about the cell shakedown and subsequent discipline. Further, a prisoner bringing a *pro se* action cannot represent a class of plaintiffs. *See Lewis v. Lenc–Smith Mfg. Co.,* 784 F.2d 829, 831 (7th Cir.1986); Fed. R. Civ. P. 11. Under the circumstances, Plaintiff's request for class certification is **DENIED** without prejudice. (Doc. 8).

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1-6** survive threshold review. **Counts 7 and 9** will be **DISMISSED without prejudice** for failure to state a claim. Defendants Millner, Dille, Meier, Heimgardtner, Holton, and Kink will be **DISMISSED without prejudice**. Plaintiff's IRFRA claims are **DISMISSED without prejudice** to Plaintiff refiling those claims in state court. **Counts 8 and 10** will be **DISMISSED with prejudice** as legally frivolous. Plaintiff's Motion for Service of Process at Government Expense is **MOOT**. (Doc. 4). Plaintiff's Motion to Classify as a Class Action is **DENIED** without prejudice. (Doc. 8).

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Mueller, Baldwin, Boehler, Keim, Waggoner, Farthing, Burton, McQuarrie, Voss, Gebke, Christianson, Toennies, Wegman, Walker, and Rupert: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court

15

will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 25, 2017**

s/ MICHAEL J. REAGAN
**U.S. Chief District Judge**